UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| THOMAS AVERY and KURT STABEL,<br><br>　　　　　　　　Plaintiffs,<br>v.<br><br>SANFORD BARSKY,<br><br>　　　　　　　　Defendant. | Case No. 3:12-cv-00652-MMD-WGC<br><br>ORDER |
| SANFORD BARSKY,<br><br>　　　　　　　Third-Party Plaintiff,<br>v.<br><br>VENTANA MEDICAL SYSTEMS, INC.,<br>and OHIO STATE UNIVERSITY,<br><br>　　　　　　　Third-Party Defendants. | |

## I.   SUMMARY

Before the Court are Plaintiffs Thomas Avery and Kurt Stabel's Motion for Reconsideration or Clarification of the Court's April 17, 2013, Order or, in the Alternative, Motion for Amendment *Nunc Pro Tunc* (dkt. no. 37), and Third-Party Defendant Ventana Medical Systems, Inc's ("Ventana") Motion to Dismiss (dkt. no. 50). For the reasons stated below, Plaintiffs' Motion is denied and Third Party Defendant's Motion is granted in part and denied in part.

## II.   BACKGROUND

The following facts are taken from the Complaint. (Dkt. no. 1.) In 1999, Plaintiffs Thomas Avery and Kurt Stobel collaborated and developed an invention which they later

sought to patent. Plaintiffs conceived of an idea to create a searchable database of digital images of known pathology specimens, and then use pattern recognition software to compare images of unknown pathology specimens to known pathology specimens to identify similar specimens. The invention would use that information to help diagnose a condition. In their Patent Application, the parties referred to this invention as "High Resolution Digital Image Processing in the Analysis of Pathological Materials." (Dkt. no. 1 at 19.)

Plaintiffs worked with Defendant Sanford Barsky ("Barsky"), an affiliate of UCLA, to develop the idea, turn it into a patentable invention, and develop a business called Imaging Insight that would bring the invention to market. Plaintiffs negotiated with UCLA to advance the expenses associated with pursuing the patent. UCLA directed its counsel to prepare and file the patent application. Provisional Patent Application 60/224,252 was filed with the US Patent and Trademark Office ("USPTO") on August 10, 2000. Barsky, Stabel, and Avery were all listed as inventors.

The parties agreed that they would keep confidential their exchange of ideas for the development of the patent. They also agreed to divide equally any proceeds derived from the pursuit of the business and/or the patent.

However, Plaintiffs allege that Barsky did not honor the parties' agreement, instead individually pursuing the patent and development of the related business. On August 9, 2001, Barsky submitted a new patent application for the same invention Avery and Stabel had approached him about in 2000. The application named Barsky as the sole inventor, but copied verbatim most of the language from the original patent application. Barsky then executed an Assignment of Rights to the Regents of the University of California. In January 2003, without Plaintiffs' knowledge, Barsky helped form a company named BioImagene. The company was formed to develop digital pathology as a research and diagnostic tool. Over the following two years, Barsky and others related to BioImagene filed applications for spin-off patents for the automated detection of cell patterns to be used by BioImagene.

In 2008, the Regents of the University of California assigned their contrived rights in the invention to Ohio State University ("OSU"). In early 2011, OSU assigned to Barsky, without consideration, its contrived rights in the invention.

On February 22, 2011, the USPTO issued OSU Patent No. US 7,894,645 B2. The supporting documentation names Barsky as the sole inventor.

Plaintiffs aver that Barsky reaped substantial rewards as a result of the patent. For example, he was recognized as a "pioneer of digital pathology" and used his success to become a professor and Chair of the Department of Pathology at the University of Nevada School of Medicine. Barsky then participated in the sale of BioImagene, along with transfer of the spin-off patents, to the Roche company for roughly $1 billion. While Plaintiffs' Division of Proceeds Agreement with Barsky stated that Barsky was required to provide Plaintiffs with written notice of all proceeds granted to him within ten (10) days of his receipt, and to divide the proceeds equally amongst himself, Avery, and Stabel, Barsky did not provide Plaintiffs with any of the proceeds from BioImagene's sale.

Plaintiffs filed this lawsuit against Barsky on December 12, 2012. The Complaint alleges seven claims: (1) direct and contributory patent infringement; (2) breach of contract; (3) fraud; (4) misappropriation of trade secrets; (5) conversion; (6) unjust enrichment; and (7) breach of the covenant of good faith and fair dealing.

Barsky brought a Motion to Dismiss on February 6, 2013. (Dkt. no. 26.) On April 17, 2013, the Court issued an order allowing all claims to proceed except for Plaintiffs' patent infringement claim. (Dkt. no. 33.) Plaintiffs now seek reconsideration of the Court's dismissal of that claim. (Dkt. no. 37).

On May 1, 2013, Barsky answered the Complaint and brought counterclaims against Ventana and Ohio State University. (Dkt. no. 34.) Ventana now seeks to dismiss all of Barsky's counterclaims against it. (Dkt. no. 50.)

///

///

### III. MOTION FOR RECONSIDERATION

#### A. Legal Standard

Although not mentioned in the Federal Rules of Civil Procedure, motions for reconsideration may be brought under Rules 59(e) and 60(b). *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993). Rule 59(e) provides that any motion to alter or amend a judgment shall be filed no later than 28 days after entry of the judgment. Fed. R. Civ. P. 59(e). The Ninth Circuit has held that a Rule 59(e) motion for reconsideration should not be granted "absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (quoting *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)).

Under Rule 60(b), a court may relieve a party from a final judgment, order or proceeding only in the following circumstances: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) a void judgment; (5) a satisfied or discharged judgment; or (6) any other reason justifying relief from the judgment. *Backlund v. Barnhart*, 778 F.2d 1386, 1387 (9th Cir. 1985). "Relief under Rule 60(b)(6) must be requested within a reasonable time, and is available only under extraordinary circumstances." *Twentieth Century-Fox Film Corp. v. Dunnahoo*, 637 F.2d 1338, 1341 (9th Cir. 1981) (internal citations omitted).

A motion for reconsideration must set forth the following: (1) some valid reason why the court should revisit its prior order; and (2) facts or law of a "strongly convincing nature" in support of reversing the prior decision. *Frasure v. United States*, 256 F. Supp. 2d 1180, 1183 (D. Nev. 2003). On the other hand, a motion for reconsideration is properly denied when the movant fails to establish any reason justifying relief. *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985) (holding that a district court properly denied a motion for reconsideration in which the plaintiff presented no arguments that were not already raised in his original motion). Motions for reconsideration are not "the

proper vehicles for rehashing old arguments," *Resolution Trust Corp. v. Holmes*, 846 F. Supp. 1310, 1316 (S.D. Tex. 1994) (footnotes omitted), and are not "intended to give an unhappy litigant one additional chance to sway the judge." *Durkin v. Taylor*, 444 F. Supp. 879, 889 (E.D. Va. 1977).

### B.  Discussion

The Court's April 17, 2013, Order addressing Defendant's Motion to Dismiss allowed all of Plaintiffs' claims to proceed except for Plaintiffs' claim for patent infringement. (Dkt. no. 33.) Plaintiffs now seek reconsideration, or in the alternative a *nunc pro tunc* amendment, of the Court's dismissal of their patent claim. Plaintiffs introduce no new evidence in their Motion nor argue that there has been a change in law. Therefore, relief is only available to Plaintiffs if the Court finds that it committed plain error.

First, Plaintiffs seek modification of the Court's notice of the USPTO's public record that "Provisional Application for 60/224,252 has expired and that the patent was not issued." (Dkt. no. 37 at 3.) Plaintiffs, citing allegations in their Complaint, state that Provisional Patent Application 60/224,252 reflects a priority date of August 10, 2000. On August 9, 2001, before the Provisional Patent expired, Defendant filed his non-provisional patent application for what Plaintiffs allege was the same invention. In filing his patent, Defendant claimed the benefit under 35 U.S.C. § 119(e) of Plaintiffs' Provisional Patent. (*See* dkt. no. 37 at 5.) They argue that because Defendant's patent "received the filing date established through the provisional patent . . . the relevant patent did issue." (*Id.* at 3.)

Plaintiffs themselves admit that the "provisional patent did expire, as all provisional patents do after one year." (Dkt. no. 37 at 3.) Their argument that Defendant's patent was for the same invention does not change the fact that Plaintiffs' Provisional Patent itself did not issue. The Court therefore declines to reconsider its finding that Provisional Patent 60/224,252 expired and that the patent was not issued.

///

Second, Plaintiffs seek reconsideration or modification of the Court's conclusion that:

> Plaintiffs do not allege that their invention has in fact obtained patent registration with the USPTO. While Plaintiffs allege that they filed a Provisional Patent Application, nowhere does the Complaint allege that the USPTO issued the patent. (Dkt. no. 33 at 5.)

The Court acknowledges that Plaintiffs do allege that Defendant's 2001 patent application was for the same invention for which Plaintiffs received Provisional Patent Application 60/224,252. However, Plaintiffs clearly state that Defendant identified only himself as the inventor. (Dkt. no. 1 ¶ 17.) They further admit that a patent eventually issued in February 22, 2011, Patent No. US 7,894,645 B2, listing Barsky as the sole inventor. (*Id.* ¶ 22.) As discussed above, Plaintiffs' Provisional Patent Application 60/224,252 expired and thus did not issue. As a result, no patent has issued to Plaintiffs. In order to succeed on a patent infringement claim, Plaintiffs must demonstrate that they are the owner of a valid, protectable mark. *Grocery Outlet, Inc. v. Albertson's, Inc.*, 497 F.3d 949, 951 (9th Cir. 2007). As Plaintiffs have failed to allege ownership of a valid patent, the Court declines to reconsider its dismissal of Plaintiffs' patent infringement claim.

## IV.   VENTANA'S MOTION TO DISMISS

Barsky's Answer to Plaintiffs' Complaint includes a Third-Party Complaint against Third-Party Defendants Ventana Medical Systems, Inc. ("Ventana") and Ohio State University. In his Third-Party Complaint, Barsky alleges the following relevant facts. Ventana is the successor-in-interest to BioImagene. From 2005 to 2010, Barsky signed a series of Member Advisory Board Medical Agreements ("Agreements") with BioImagene in which Barsky agreed to serve as their Medical Director and Consultant. (Dkt. no. 34 ¶ 16.) The Agreements includes an indemnification provision. (*See id.* ¶ 18.) The parties agree that California law applies to the construction of the Agreement.

On July 31, 2013, Ventana filed a Motion to Dismiss seeking dismissal of all claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. no. 50.) The

Court has considered Ventana's Motion, Barsky's Reponse (dkt. no. 54), and Ventana's Reply (dkt. no. 57).

### A. Legal Standard

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 US 662, 678 (2009) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 679. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged – but not shown – that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

///

A complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (*quoting Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989) (emphasis in original)).

### B. Discussion

#### 1. Express Indemnity

Ventana argues that express indemnification must be construed strictly in favor of the indemnitor (Ventana) and against the indeminitee (Barsky). Under this construction, Ventana argues that: (1) the claims in the instant action fall outside the scope of the alleged contractual indemnification; and (2) any indemnification would only apply from June 2009 through 2011.

While the Court agrees that that express indemnification must be construed in favor of the indemnitor, the Court cannot find at this time that the claims against Barsky fall outside of the alleged contractual indemnification. The Third-Party Complaint alleges that Barsky signed a series of renewable Agreements with BioImagene from 2005 to 2010. (Dkt. no. 34 ¶ 16.) Ventana attaches to its Motion to Dismiss a document that it represents to be "a true and correct copy of the alleged agreement on which Third-Party Plaintiff Barsky bases his claim of alleged express contractual indemnification." (Dkt. no. 50-1 ¶ 2.) The attached agreement was signed in 2009 and remained valid until 2011. Barsky indicates that there were multiple agreements, each valid for two year terms. (*See* dkt. nos. 34 ¶ 14; 54 at 4–5.) Neither party attaches these other agreements nor indicates whether they were identical. While Ventana makes a compelling argument that the claims against Barsky fall outside of the indemnification provision in the Agreement it attaches to its Motion, the Court cannot find on that basis alone that no Agreement exists under which Barsky can bring an express indemnification claim.

Additionally, the Court cannot find that indemnification would only apply from 2009-2011. First, while the agreement attached to Ventana's Motion only covers that time period, Barsky's Third-Party Complaint alleges, as discussed above, that he signed

agreements from 2005 to 2010 and on a Motion to Dismiss the Court must accept all of Third-Party Plaintiff's allegations as true. Second, while the 2009 agreement Ventana attached to its Motion was only in effect for two years (dkt. no. 50-2 ¶ 8), that does not lead to the conclusion that conduct that occurred from 2009-2011 is not indemnified following the expiration of the agreement. Instead, the termination clause simply requires that any conduct that occurs after the expiration of the agreement would not be indemnified under the agreement.

### 2. Equitable Indemnity

It is well established that a claim for equitable indemnification is not ripe until the individual seeking indemnification has satisfied any obligation owed to the injured party. *See, e.g., Mangini v. Aerojet-General Corp.*, 230 Cal. App. 3d 1125, 1154 (1991) ("It is well settled that, in the absence of a contrary statutory command, a cause of action for equitable indemnity does not come into existence until the indemnitee has suffered loss through payment."). As Barsky has not settled, paid a judgment, or otherwise satisfied claims asserted against him, this claim is not yet ripe for review. Barsky's claim for equitable indemnity is, therefore, dismissed.

### 3. Implied Indemnity

As implied contractual indemnity is a form of equitable indemnity under California law, Barsky's claim for implied contractual indemnity must also be dismissed on ripeness grounds. *See* Section III.B.2., *supra*; *see also Major Clients Agency v. Diemer*, 67 Cal. App. 4th 1116, 1126–27.

## V.   CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion.

It is therefore ordered that Plaintiffs' Motion for Reconsideration (dkt. no. 37) is denied.

It is further ordered that Third-Party Defendant Ventana Medical Systems, Inc.'s Motion to Dismiss Third-Party Complaint (dkt. no. 50) is denied in part and granted in part.

- Third-Party Defendant's Motion is granted as it relates to Third-Party Plaintiff's equitable and implied indemnity claims.
- Third-Party Defendant's Motion is denied as it relates to Third-Party Plaintiff's express indemnity claims

ENTERED THIS 4th day of March 2014.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE